**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

HANNA JESIONOWSKA PRACTICE LLC,

                  Debtor.

Chapter 11

Case No: 25-12501 (DSJ)

### OPINION AND ORDER DENYING DEBTOR'S OBJECTION TO CLAIM NUMBERS 2 AND 3 AND GRANTING CONDO BOARD'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**APPEARANCES:**

The Law Office of Leo Fox, Esq.
*Counsel for the Debtor*
630 Third Avenue, 18th Floor
New York, New York 10017
By:    Leo Fox

OFFIT KURMAN, P.A.
*Counsel for the Board of Managers of Saga House Condominium*
590 Madison Avenue, 6th Floor
New York, New York 10022
By:    Albena Petrakov

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court are the Debtor's objection to proofs of claim Nos. 2 and 3 filed by the

Board of Managers of Saga House Condominium (the "Board") pursuant to 11 U.S.C. § 502 and

Rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedures (the "Claims Objection" or

"Claims Obj.") [ECF No. 28] and the Board's Motion for Relief from the Automatic Stay

pursuant to 11 U.S.C. § 362(d)(1) (the "Lift Stay Motion" or "Lift Stay Mot.") [ECF No. 33].

The Board's proofs of claim are premised on the amount of a state court foreclosure judgment of

Debtor's medical practice condominium unit related to unpaid common charges plus costs, fees,

and interest, as well as the Debtor's post-petition unpaid common charges. The Claims Objection

1

asserts a right to offset the amounts sought in Claims Nos. 2 and 3 based on the allegation that the Board's negligence led to damage to the Debtor's condominium unit and also based on the further allegation that adjustments are needed due to accounting discrepancies regarding payments previously made by the Debtor to the Board. Meanwhile, the Board has moved to lift the stay to continue its foreclosure process of the condominium unit.

The Board filed opposition to the Claims Objection (the "Claims Obj. Opp.") [ECF No. 36] and the Debtor filed an objection to the Lift Stay Motion (the "Lift Stay Obj.") [ECF No. 37]. The Board also filed a reply in further support of the Lift Stay Motion (the "Lift Stay Reply") [ECF No. 40].

On March 26, 2026, the Court heard argument from counsel for the Debtor and the Board. The Court reserved decision. At the March 26 hearing, the Court invited the Board to submit a supplemental declaration identifying the date of the last payment of common charges. The Board did so (the "Suppl. Decl.") [ECF No. 41], reporting that Debtor last made a payment on August 4, 2023. Further, the Board filed a letter dated April 20, 2026 (the "April 20 Letter") [ECF No. 44] advising the Court that a tax lien foreclosure action has been initiated against the Debtor's commercial condominium unit, reflecting an undisclosed lien balance of $106,991.96 that is accruing interest at sixteen percent annually. The tax lien appears to be senior to the Board's lien interests. The Board additionally apprised the Court that the Debtor has made no post-petition payments since the Court heard the motions on March 26.

For reasons explained below, the Claims Objection is denied and the Board's Lift Stay Motion is granted.

## BACKGROUND

This Opinion and Order provides only such background as is pertinent to this decision.

Hanna Jesionowska Practice, LLC, the Debtor, owns Medical Unit 1 (the "Unit"), a commercial condominium unit located at 157 East 74th Street in Manhattan, within the Saga House Condominium (the "Condominium"). The Debtor leases the Unit to Hanna Jesionowska, the Debtor's principal, for the use of her medical practice. Claims Obj. ¶ 2; Declaration of Pierre de Villemejane ("de Villemejane Decl.") ¶ 10 [ECF No. 33-1]. As the Unit's owner, the Debtor is bound by the Condominium's Declaration and By-Laws, which require the timely payment of common charges, assessments, and related fees. *Id.* ¶ 10. The By-Laws vest the Board with broad authority to govern the affairs of the Condominium, including the exclusive authority to determine common expenses, fix and allocate common charges and assessments, prescribe the timing and manner of payment, and enforce such obligations through interest, fees, liens, and foreclosure. *Id.* ¶¶ 2-9.

The Debtor has owned the Unit since 2001. *Id.* ¶ 10. The record reflects a longstanding pattern of nonpayment of common charges and related obligations. The Debtor's delinquencies led to a prior lien filed in 2020 that was resolved through a June 2022 settlement pursuant to which the Debtor paid $105,000 in arrears. *Id.* ¶¶ 11, 13; Ex. 2, ECF No. 33-3; Ex. 4, ECF No. 33-5. Compliance with the by-laws and payment obligations was short-lived. By the fall of 2022, the Debtor again failed to remain current on its obligations, which included both ordinary common charges and subsequently imposed assessments. De Villemejane Decl. ¶ 14. Indeed, the last payment made by or on behalf of the Debtor to the Board was in August 2023. Suppl. Decl. ¶ 8. The Debtor has also disputed certain utility-related charges identified in a 2018 energy audit, which gave rise to separate litigation; all other affected unit owners resolved those claims, but the Debtor did not. *Id.* ¶ 12.

Despite written notices of default and the filing of an additional lien in March 2024, the Debtor made no meaningful payments. *Id.* ¶¶ 15-16; Ex. 5, ECF No. 33-6. In response, the Board commenced an action in New York State Supreme Court (the "Foreclosure Action") to foreclose its lien against the Unit. *Id.* ¶ 16. On October 3, 2025, the state court entered a final judgment of foreclosure and sale (the "Judgment"), authorizing the sale of the Unit at auction to satisfy the amounts owed, which totaled approximately $251,000 plus costs, fees, and interest. Notice of entry of the Judgment was served, and the Debtor did not perfect an appeal or otherwise obtain relief from that Judgment. *Id.* ¶ 18; Ex. 6, ECF No. 33-7.

A foreclosure sale was scheduled for November 12, 2025. De Villemejane Decl. ¶ 19. The Debtor sought emergency relief in state court to stay the sale, but its request for a temporary restraining order was denied. *Id.* ¶ 20; Ex. 7, ECF No. 33-8. The Debtor appealed the order denying its request for a TRO, *see* Ex. C, ECF No. 37-3, but did not appeal the Judgment itself. Five days before the scheduled auction, on November 7, 2025 (the "Petition Date"), the Debtor commenced this Chapter 11 case, thereby triggering the automatic stay. *See* ECF No. 1.

Since the Petition Date, the Debtor has not paid any post-petition common charges or assessments, which continue to accrue monthly. *See* April 20 Letter at 1. As of the date of the relevant submissions, the post-petition arrears exceed $44,000. *See* De Villemejane Decl. ¶¶ 21-22.

The Debtor's schedules identify two secured creditors: KeyBank National Association, which holds a first-priority mortgage in the approximate amount of $1.3 million, and the Board, in the approximate amount of $395,378.51, arising from unpaid common charges and assessments. *See* Schedule A/B [ECF No. 14]; Claims Register No. 2-1 and 3-1. No unsecured creditors are listed. The Debtor values the Unit at approximately $2.5 million, *see* Schedule A/B,

4

suggesting a potential equity cushion, although the Court has not taken evidence or made findings regarding the Unit's value. Monthly operating reports filed by the Debtor indicate that accumulated depreciation reduced the value of Debtor's interest in the Unit from approximately $1.362 million in November 2025 to approximately $1.180 million in March 2026. *Compare* ECF No. 30 *with* ECF No. 43.

### JURISDICTION

The Court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (H), and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### LEGAL STANDARDS

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate. 11 U.S.C. § 501(a). A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Absent an objection, a properly executed and filed proof of claim constitutes prima facie evidence of the validity and amount of the claim pursuant to Rule 3001(f), provided that it alleges facts sufficient to support the asserted liability. *See In re Nordlicht*, 674 B.R. 528, 534 (Bankr. S.D.N.Y. 2025) (citing Fed. R. Bankr. P. 3001(f)); *In re Metex Mfg. Corp.*, 510 B.R. 735, 740 (Bankr. S.D.N.Y. 2014) (same); *In re Kerner*, 599 B.R. 751, 757 (Bankr. S.D.N.Y. 2019); 4 Collier on Bankruptcy ¶ 502.02[3][e] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2026).

If an objection is made, Section 502 requires the Court to determine the amount of such claim "as of the filing date." *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y. 2007) (citation omitted). Section 502(b)(1) provides that claims may be disallowed if they are

5

"unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1); *see also Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 179 (2d Cir. 2007). Bankruptcy courts look to "applicable nonbankruptcy law" to determine whether a claim is allowable. *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

"To overcome this *prima facie* evidence, [an] objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000); *see also In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009). If the objector does not "introduce[ ] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 Collier on Bankruptcy ¶ 502.02[3][e] (citing cases); *cf.* Fed. R. Evid. 301. By producing "evidence equal in force to the *prima facie* case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) (discussing identical burden-shifting framework)).

## DISCUSSION

The Court discusses the Claims Objection and the Lift Stay Motion in turn.

### I.    The Court Denies the Claims Objection

The Debtor requests that the Court apply an offset of approximately $623,000 based on alleged damages and accounting discrepancies. *See* Claims Obj. ¶ 11. Broadly speaking, the Debtor contends that the Board's negligence impaired Debtor's (or Debtor's principal's) ability

to operate its medical practice in the Unit, and that it is entitled to reimbursement of out-of-pocket repair costs as well as damages for loss of use of the property, including alleged lost income for a period exceeding 165 days. *See id.* ¶ 21. Specifically, the Claims Objection asserts the Board's alleged liability for a series of flooding incidents and related damages, including $117,000 for property damage resulting from flooding events, $390,000 for loss of income attributed to the SAGA Board's alleged negligence therein, and $10,000 for an insurance payment related to a 2021 flood. *See id.* ¶¶ 11, 13–21. The Debtor also disputes specific charges, including approximately $44,000 in assessment charges, and asserts that certain payments made to the Board, including one for $108,101 made in 2022 pursuant to a settlement of the 2020 lien and electrical charges dispute, were not properly applied to Debtor's account. *See id.* ¶¶ 9, 20. These cumulative amounts are incorporated within the requested offset. *See id.* ¶ 11.

Debtor's Claims Objection is denied on multiple grounds set forth immediately below.

### A.  The *Rooker-Feldman* Doctrine Prevents Review of the Judgment

The Board argues that the Debtor's objection to Claim No. 2, *i.e.*, the claim based on the final judgment of foreclosure and sale, is barred by the *Rooker-Feldman* doctrine. Claims Obj. Opp. ¶ 9. Claim No. 2 is comprised of the Judgment of "$251,391.84 for pre-June 9, 2025 common charges and assessment arrears, $59,529.75 for post-judgment common charges and assessment arears, interest in the amount of $18,662.13, costs in the amount of $1,090, and reasonable attorneys fees in the amount of $21,000." Addendum to Proof of Claim No. 2 ¶ 7; *see also* Proof of Claim No. 2, Ex. E (a statement itemizing interest and expenses and a copy of the ledger). The Court agrees.

"The *Rooker-Feldman* doctrine is a doctrine of civil procedure enunciated by the United States Supreme Court in two cases," *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *Dist. of*

*Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *Burton v. Wells Fargo Bank, N.A.,* 738 F. Supp. 3d 272, 288 (E.D.N.Y. 2024). "*Rooker-Feldman* bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283 (2005)). The doctrine also "bars federal courts from reviewing claims that were not only raised in the state court action, but also claims that were not raised but are nonetheless 'inextricably intertwined' with the state court judgment." *Burton*, 738 F. Supp. 3d at 288 (citing *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 86–87 (2d Cir. 2005)).

The Second Circuit has outlined four requirements to invoke the *Rooker-Feldman* doctrine: (i) the federal plaintiff lost in state court; (ii) the plaintiff complains of injuries caused by the state court judgment; (iii) the plaintiff invites federal court review and rejection of that judgment; and (iv) the state court judgment was entered before the federal action commenced. See *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) (citing *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010)); *Hoblock*, 422 F.3d at 85. Though all four of the requirements "must be met to preclude jurisdiction, the second requirement is the 'core' requirement." *Francis v. Fed. Nat'l Mortg. Ass'n*, No. 20-CV-5863 (EK) (MMH), 2023 WL 2707098, at *5 (E.D.N.Y. Mar. 30, 2023); *see also Hoblock*, 422 F.3d at 85 (requirements two and three are considered "substantive").

Here, the first and fourth requirements of *Rooker-Feldman* are readily satisfied. The Debtor plainly lost in the state court foreclosure action, as evidenced by the Judgment. *See* Proof

8

of Claim No. 2, Ex. D; Claims Obj. Opp. ¶¶ 10, 38. The Judgment was entered prior to the Petition Date on November 7, 2025. *Compare* Proof of Claim No. 2, Ex. D *with* ECF No. 1.

A judgment of foreclosure and sale constitutes a final determination on the merits as to all issues between the parties. *See Gray v. Bankers Trust Co. of Albany, N.A.*, 82 A.D.2d 168, 170–71, 442 N.Y.S.2d 610 (N.Y. App. Div. 3d Dept. 1981); *Agard v. Select Portfolio Servicing, Inc.*, No. 11-CV-1826 JS, 2012 WL 1043690, at *4 (E.D.N.Y. Mar. 28, 2012); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (*Rooker-Feldman* applies where "the losing party in state court filed suit in federal court after the state proceedings ended… and seeks[s] review and rejection of that judgment."); *Zokaites Props. v. La Mesa Racing, LLC*, No. CIV.A. 11-1153, 2012 WL 3144127, at *8 (W.D. Pa. Aug. 1, 2012) (recognizing that the doctrine applies only where the federal action is filed after the state proceedings have "ended."). Debtor's reliance on a post-petition notice of appeal does not alter this conclusion. That appeal, filed on January 6, 2026, *see* Lift Stay Mot. ¶ 18, relates only to the state court's November 5, 2025 order denying the Debtor's request for a temporary restraining order (TRO) for failure to demonstrate irreparable harm and does not concern the merits of the Judgment entered on October 3, 2025. And even if this were not the case, the pendency of an appeal does not preclude application of the *Rooker-Feldman* doctrine to bar a federal court from entertaining a collateral attack on the state court's judgment. *See Davis v. Baldwin*, 594 Fed. App'x 49, 50 (2d Cir. 2015); *Gabriele v. Am. Home Mortg. Servicing*, 503 Fed. App'x 89, 92 (2d Cir. 2012); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014); *Swiatkowski v. New York*, 160 Fed. App'x 30, 31–32 (2d Cir. 2005); *Johnson-Gellineau v. Steine & Associates, P.C.*, No. 16-CV-9945 (KMK), 2018 WL 1605574, at *7 n.11 (S.D.N.Y. Mar. 29, 2018); *Bucksin Realty Inc. v. Windmont Homeowners Ass'n (In re Bucksin Realty Inc.)*, 2017 WL 1130166, at *4; *Magana v.*

9

*Wells Fargo Bank, N.A.*, No. 3:17-CV-2176 (JCH), 2018 WL 3055782, at *2 n.2 (D. Conn. May 4, 2018); *Gomez v. Yisroel*, No. 21-CV-2172 (PAC), 2021 WL 2138462, at *3 n.4 (S.D.N.Y. May 26, 2021).

The Claims Objection effectively invites this Court to revisit, recalculate, and reject, *i.e.*, "attack," the Judgment, as it challenges the amount of the debt already determined by the state court by scheduling Claim No. 2 as disputed. Ruling in favor of the Debtor would require the Court "to question the validity of the state court judgment," which it cannot do under *Rooker-Feldman*. *See Holmes v. Ocwen Loan Servicing LLC (In re Holmes)*, No. 19-23497 (SHL), 2020 WL 4279576, at *4 (Bankr. S.D.N.Y. July 24, 2020); *Swiatkowski v. Citibank*, 446 F. App'x 360, 361 (2d Cir. 2011); *Agard*, 2012 WL 1043690, at *4. Granting relief would necessarily require this Court to determine that the state court erred in fixing the amount of the debt, thereby improperly placing this Court in the role of an appellate tribunal. *See Pennzoil Co. v. Texaco*, 481 U.S. 1, 24–25 (1987); *In re Sanders*, 408 B.R. 25, 33 (Bankr. E.D.N.Y. 2009) ("The *Rooker-Feldman* doctrine 'strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions.'") (quoting *Book v. Mortg. Elec. Registration Sys.,* 608 F.Supp.2d 277, 288 (D. Conn. 2009)); *Hoblock*, 422 F.3d at 84. This is so even as to Debtor's asserted right of setoff because, as detailed below, the presiding state court rejected similar counterclaims in the proceedings that led to the Judgment.

As the Second Circuit explained in *Vossbrinck*, *Rooker-Feldman* precludes a federal court from entertaining a suit that "would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014). Courts in this Circuit have consistently held that attacks on a foreclosure judgment are barred under the *Rooker-Feldman* doctrine. *See, e.g.*,

10

*Swiatkowski v. Citibank*, 446 F. App'x 360, 361 (2d Cir. 2011); *Ford v. U.S. Dep't of Treasury I.R.S.*, 50 F. App'x 490, 491 (2d Cir. 2002); *Moise v. Ocwen Loan Servicing LLC (In re Moise)*, 575 B.R. 191, 201–02 (Bankr. E.D.N.Y. 2017); *Holmes*, 2020 WL 4279576, at *4; *In re Mehl*, 660 B.R. 353, 361 (Bankr. S.D.N.Y. 2024); *Demarais v. Kiniry (In re Demarais)*, No. 05-13147, 2008 WL 3286218, at *4 n.6 (Bankr. N.D.N.Y. Aug. 7, 2008); *Davis v. JP Morgan Chase Bank*, No. 14-CV-6263 (KMK), 2016 WL 1267800, at *6 (S.D.N.Y. Mar. 30, 2016).

The second and third requirements are likewise met. Although the Debtor characterizes its claims objection as merely seeking a reduction of the allowed claim under Section 502(a)–(b), *see* Claims Obj. ¶ 24(a)–(d), the argument is unpersuasive. An "injury caused by a state-court judgment" can include allegations of judicial error, criminal violations, or fraud, or simply dissatisfaction with the state court's ruling. *See, e.g.*, *In re 231 Fourth Ave. Lyceum, LLC*, 513 B.R. 25, 32 (Bankr. E.D.N.Y. 2014); *In re Letennier*, 660 B.R. 431, 438 (Bankr. N.D.N.Y. 2024); *Roberts v. Perez*, No. 13–CV–5612 (JMF), 2014 WL 3883418, at *4 (S.D.N.Y. Aug. 7, 2014); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002). While the Debtor does not explicitly allege injuries caused by the Judgment in state court, the substance of the Claims Objection demonstrates that by demanding an offset of approximately $623,000 against the amount the Debtor owes under the Judgment based on amounts it contends were not properly accounted for or from injuries caused by the Board's negligence, the alleged injuries must have necessarily flowed directly from issues that were or could have been litigated in the state court foreclosure proceedings. The *Rooker-Feldman* doctrine applies not only to direct challenges to a state court judgment but also to claims that are "inextricably intertwined" with that judgment. *See Pharr v. Evergreen Garden, Inc.*, 123 Fed. App'x 420, 422–23 (2d Cir. 2005); *Mehl*, 660 B.R. at 360; *Moise*, 575 B.R. at 201. By seeking to offset the amount of the Judgment sought in

11

Claim No. 2 with counterclaims premised on the Board's negligence and accounting errors, the Debtor, in substance, asserts that the state court's determination of the debt underlying the Judgment caused the alleged harm. *See In re Merhi*, 518 B.R. 705, 714 (Bankr. E.D.N.Y. 2014) ("Debtor is barred from revisiting issues that would necessarily undermine the relief granted in the Foreclosure Action. Any action to void or offset the Debtor's obligations to [Creditor] is barred by the *Rooker–Feldman* doctrine and principles of res judicata."); *Swiatkowski*, 446 F. App'x at 361 (affirming dismissal of plaintiff's complaint under *Rooker–Feldman* which disputed a proof of claim premised entirely on the validity of a state court foreclosure judgment).

Accordingly, the Court concludes that the *Rooker–Feldman* doctrine precludes this Court from revisiting issues that have already been fully adjudicated and decided by the state court.

### B. *Res Judicata* Prevents Review of the Debtor's Counterclaims

The Board next argues that the affirmative defenses and counterclaims raised in the Claims Objection are barred by *res judicata*. Claims Obj. Opp. ¶ 40. *Res judicata*, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284–85 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (internal quotations omitted)); *St. Pierre v. Dyer,* 208 F.3d 394, 399 (2d Cir. 2000) (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981)) (same); *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (same). The doctrine is intended to provide finality and prevent repetitive litigation. *In re DeFlora Lake Dev. Assocs., Inc.*, 571 B.R. 587, 594 (Bankr. S.D.N.Y. 2017) (citing *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995)). "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." *New York v.*

*Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738). *Res judicata* has

four requirements: "(1) a final judgment on the merits, (2) by a court of competent jurisdiction,

(3) in a case involving the same parties or their privies, and (4) involving the same cause of

action." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021) (quoting *EDP Med. Comput.

Sys., Inc. v. United States*, 430 F.3d 621, 624 (2d Cir. 2007) (internal quotations removed)).

Here, all four requirements of *res judicata* are satisfied. The Judgment, *i.e.*, the final

judgment of foreclosure and sale, constitutes a final judgment on the merits rendered by a court

of competent jurisdiction. State and federal courts in New York have used *res judicata* to reject

attempts to relitigate foreclosure judgments. *See, e.g., Nath v. Select Portfolio Servicing, Inc.*,

2017 WL 782914, at *10 (S.D.N.Y. Feb. 28, 2017), *aff'd*, 732 F. App'x 85 (2d Cir. 2018) (A

foreclosure judgment "is final as to all questions at issue between . . . parties and concludes all

matters of defense that were or might have been litigated in the [f]oreclosure [a]ction.") (quoting

*Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 147 (E.D.N.Y. 2016)); *Drew v. Chase

Manhattan Bank, N.A.*, No. 95-CV-3133, 1998 WL 430549, at *6–7 (S.D.N.Y. July 30, 1998)

(reaching the same conclusion). The Claims Objection involves the same parties – the Debtor

and the Board – as those in the state court foreclosure action.

Thus, the only question requiring more than cursory discussion is whether the Claims

Objection raises the same claims, or claims that could have been raised, in the foreclosure

proceeding. The answer is yes, at least insofar as the Debtor is attempting to question or

condition the enforceability of the Judgment. Indeed, in its order granting summary judgment to

the Board, the state court severed the Debtor's counterclaims, viewing them as "wholly

dissimilar and separable from the lien foreclosure action," Proof of Claim No. 2, Ex. C, at 4, and

as "entirely conclusory and unsupported by any facts in the answer." *Id.* Thus, to the extent

Debtor contends it has affirmative defenses to the Board's entitlements as determined by the state court, the state court itself has rejected Debtor's pursuit of those defenses in the state-court action, and so those defenses have either been rejected on the merits or determined not to be sufficiently related to the foreclosure action to be considered in that same proceeding. Either way, Debtor's attempt now to reduce the Board's judgment-based entitlements by asserting defenses is barred either as a defense that "could have been" asserted in the state court action, or as a defense that the state court actually rejected to the Board's foreclosure action. *Res judicata* bars Debtor's use of these defenses as against the Board's claim premised on the resulting Judgment, no matter how one views the asserted offsetting entitlements.

The one limitation on this conclusion is that there arguably may not have been a state-court final merits determination of Debtor's intended counterclaims as opposed to a ruling that those counterclaims were severed because they did not go the Board's foreclosure action entitlements, even as the state court also described the counterclaims as conclusory and unsupported by facts. As a result, *res judicata* may not preclude Debtor's pursuit of relief in an appropriate forum, whether in this Court or elsewhere, independent of the Court's determination of the validity of the Board's claim. *See* Section D, *infra*. But *res judicata* does bar using those defenses or purported counterclaims as defenses to the allowance of a claim that is based on the final judgment that the Board holds against Debtor following the state court's consideration of all defenses raised there by Debtor. *See Merhi*, 518 B.R. at 714. To hold otherwise would allow the Debtor to avoid the preclusive effect of the Judgment. *See Moise*, 575 B.R. at 204; *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (Res judicata bars "a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.") (citing *Smith v. Russell Sage College*, 429

14

N.E.2d 746, 750 (N.Y. 1981)); *Hinds v. Option One Mortg. Corp.*, 11-CV-06149 NGG RER, 2012 WL 6827477, at \*5 (E.D.N.Y. Dec. 6, 2012), *report and recommendation adopted*, No. 11-CIV-6149 NGG RER, 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013); *Gray*, 442 N.Y.S.2d at 612.

### C. Debtor Has Not Refuted the Prima Facie Validity of Proofs of Claim No. 2 and 3

The Board's filed proofs of claim, Claim No. 2 and Claim No. 3, are *prima facie* valid. *See* Fed. R. Bankr. P. 3001(f); *Kerner*, 599 B.R. at 757. The Debtor, as previously discussed, seeks to challenge their validity by asking that the Court apply an offset of approximately $623,000 based on affirmative relief sought in the form of reimbursement for alleged damages, insurance-related losses, and liabilities it attributes to the Board, as well as alleged accounting errors. *See* Claims Obj. ¶¶ 9, 11. The Board argues that the Debtor's Claims Objection fails to offer any facts or evidence, much less evidence equal in force to a *prima facie* case, demonstrating why its proofs of claim should be disallowed. *See* Claims Obj. Opp. ¶ 48. The Court agrees.

In essence, the Debtor seeks reimbursement for alleged out-of-pocket expenses and damages on its theory of the Board's liability, rather than presenting evidence that directly refutes the validity or amount of the Board's claims against Debtor. *See* Claims Obj. ¶¶ 11–21. Such assertions, even if accompanied by limited documentation of damages, do not constitute sufficient evidence to rebut the *prima facie* validity of the proofs of claims or refute any essential element of their legal sufficiency. *See Reilly*, 245 B.R. at 773; *Oneida*, 400 B.R. at 389; *Nisselson v. Bank of the West (In re Cocoa Servs., L.L.C.)*, No. 17-11936-JLG, 2018 WL 1801240, at \*16 (Bankr. S.D.N.Y. Apr. 13, 2018). The Debtor's argument is entirely conclusory and lacks credible supporting evidence, such as a declaration, documentation, or other admissible

15

proof demonstrating that the amounts set forth in the proofs of claim are incorrect, improper, or unenforceable. And the claim appears soundly and accurately grounded in the Judgment and in clear records. Whatever the merits of Debtor's claim of entitlement against the Board, the Board's claims are well supported and have not successfully been called into question by Debtor's showing.

For these reasons, the Debtor has failed to carry its burden. The Board's proofs of claim are allowed as filed, and Debtor's objection is denied.

### D. Bankruptcy Rule 3007(b) Procedurally Prohibits the Seeking of Affirmative Relief in a Claims Objection

The Board further argues, correctly, that the Claims Objection improperly seeks affirmative relief in the form of a monetary recovery for alleged accounting errors and damages, in an amount that exceeds the sums asserted in the proof of claim. *See* Claims Obj. Opp. ¶ 45; Claims Obj. ¶¶ 21, 24 (requesting that the Court apply an offset of approximately $623,000 based on alleged damages and accounting errors it attributes to the Board, and further asserting that it is "entitled to reimbursement of its out-of-pocket costs and expenses" incurred in repairing property damages resulting from repeated flooding allegedly caused by the Board's negligence). Such relief is prohibited under Bankruptcy Rule 3007(b), which does not permit a party to include a demand for relief of the kind specified in Rule 7001 within a claim objection. *See* Claims Obj. Opp. ¶¶ 45-47; Fed. R. Bankr. P. 3007(b), Advisory Committee's Note 2007.

Bankruptcy Rule 7001 identifies matters that constitute adversary proceedings governed by Part VII of the Bankruptcy Rules. *See* Fed. R. Bankr. P. 7001. For example, Rule 7001(1) specifically provides that an adversary proceeding includes "a proceeding to recover money or property." *Id.* 7001(1) (emphasis added). Here, the Debtor's Claims Objection seeks affirmative

16

relief that falls squarely within Rule 7001(1). These requests plainly seek to recover money, rather than merely challenge the validity or amount of the claims.

Before the rule was amended, a party's failure to commence an adversary proceeding when filing a claim objection that sought relief of the type required to be brought through an adversary proceeding was not necessarily fatal. *Compare In re Metiom, Inc.,* 301 B.R. 634, 639 (Bankr. S.D.N.Y. 2003) *with In re MF Glob., Inc.*, 531 B.R. 424, 430 (Bankr. S.D.N.Y. 2015). Rule 3007 had provided that "if an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." *Metiom*, 301 B.R. at 639 (quoting a prior version of Fed. R. Bankr. P. 3007); *MF Glob.*, 531 B.R. at 430.

The rule, though, was amended after *Metiom* was issued. *See In re Donson*, 434 B.R. 471, 474 (Bankr. S.D. Tex. 2010) ("In 2007, [Bankruptcy Rule] 3007 was substantially amended."); *Pu v. Grubin (In re Food Mgmt. Grp., LLC)*, 484 B.R. 574, 583 (S.D.N.Y. 2012) (observing that "[s]ubsequent amendments to [Bankruptcy Rule 3007] appear to disallow this kind of automatic conversion") (citing Fed. R. Bankr. P. 3007(b); *id.* Advisory Committee Note 2007)). Although Rule 3007 originally provided that a claim objection may be joined with an adversary proceeding, the amended version Rule 3007(b) now provides that "a party in interest shall not include a demand for relief of a kind specified in [Bankruptcy] Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." Fed. R. Bankr. P. 3007(b). The Advisory Committee Notes to the 2007 amendments further explain that "the amendment prohibits a party in interest from including in a claim objection a request for relief that requires an adversary proceeding." *Id.* Advisory Committee Note 2007. As Bankruptcy Rule 3007 no longer permits a claim objection to be automatically converted into an adversary proceeding when it is joined with a demand for relief, *MF Glob., Inc.*, 531 B.R. at 430, the

Debtor's request constitutes a demand for relief that must be brought through an adversary proceeding. *See* Fed. R. Bankr. P. 3007(b). Although, as explained *supra*, the relief the Debtor seeks as currently pled is barred by the doctrines of *Rooker-Feldman* and *res judicata*, the Debtor is presumably free to pursue its severed counterclaims in a different proceeding, quite possibly in state court when the Court grants the Lift Stay Motion, explained *infra*. The Court therefore need not address the merits of the affirmative relief sought in the Claims Objection. Those issues cannot be used to attack the Board's proofs of claim, and they cannot be affirmatively pursued using the claim objection procedure that Debtor relies on here.

## II.  The Court Grants the Lift Stay Motion

The Board's Lift Stay Motion seeks relief from the automatic stay under Section 362(d)(1) so that the Board can exercise its rights regarding its collateral and remedies, including the completion of the foreclosure sale, for "cause." Section 362(d)(1) states that the court "shall grant relief from the stay [] such as by terminating, annulling, modifying, or conditioning such stay (1) for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1).

### A.  "Cause" Exists to Lift the Automatic Stay

Distilling to the material heart of the facts here, the Debtor for years has failed to pay condominium common changes, a failure that has continued since the Debtor filed its petition in November 2025. That longstanding and ongoing failure has resulted in substantial and ever-increasing arrearages, a large and enforceable judgment in the Board's favor, and a substantial ongoing drain on the Board's resources and the resources of other owners in the condominium complex who must cover ongoing needs of the building without the required financial contributions of Debtor. At the same time, however, the Debtor asserts that the unit has

18

substantially greater value than the total amounts of the liens encumbering it, including the Board's judgment, such that an equity cushion assertedly "adequately protects" the Board's interest in the property. *See* Lift Stay Obj. ¶ 8. The Board challenges whether an equity cushion has been proven, *see* Lift Stay Reply ¶ 9, but it has not presented evidence on that question, the Court has not conducted an evidentiary hearing as to the unit's value, and so, for purposes of this decision, the Court assumes the existence of a substantial equity cushion.

A subset of the many cases in which lift stay motions are filed present a similar scenario, in which the debtor is failing to make required payments but an equity cushion exists or may exist. In that situation, case law interpreting Section 362(d)(1) can seem to point in different directions, with some decisions saying post-petition nonpayments alone constitute cause to lift the stay, and other courts saying that a sufficient equity cushion constitutes adequate protection and warrants declining to lift the stay.

Here, the Court concludes that "cause" exists to lift the stay under Section 362(d)(1) to permit the Board to exercise its remedies. This conclusion is easier to reach as to the Board than it might be as to a mortgage lender, because, as the Board has shown, it is suffering serious economic hardship and ongoing harms from Debtor's ongoing nonpayment of condominium common charges, and that harm will not be eliminated even if the Debtor eventually provides a make-up payment through the proceeds of an eventual sale or other restructuring. Further, that harm extends to other owners of units in the condominium, who must cover the costs that the Debtor is failing to pay. The Board's declaration credibly and persuasively explains the current, ongoing, and compounding harms the Board is suffering, and Debtor mounted no factual challenge to that showing. *See* de Villemejane Decl. ¶¶ 9-12, 21-22.

19

Turning more precisely to the governing law, Section 362(d)(1) requires lifting the stay where "cause" exists, and further provides that such "cause" "includes" a lack of "adequate protection." *In re Benton*, 662 B.R. 517, 521 (Bankr. S.D.N.Y. 2024) (citing 11 U.S.C. § 362(d)(1)); *see also In re Cole*, 202 B.R. 356, 360 (Bankr. S.D.N.Y. 1996). It follows that "cause" is not limited to the absence of "adequate protection," although Section 362(d)(1) does instruct that a lack of adequate protection constitutes cause. This suggests that Debtor's reliance on an equity cushion here is not necessarily dispositive, even assuming such a cushion exists. This conclusion is consistent with the absence of a statutory definition of "cause," which has led to the accepted recognition that courts have discretion to determine whether "cause" exists on a "case-by-case basis." *See U.S. Bank, N.A. v. Am. Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013); *see also Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002).

The Court's conclusion that "cause" exists here flows from Debtor's prolonged and ongoing period of default on condominium common charges. Debtor's current period of default began in the fall of 2022 and has continued with the exception of Debtor's last known payment of $7,200 in August 2023. Suppl. Decl. ¶ 5. The current extended period of nonpayment followed a June 2022 settlement of a prior 2020 lien pursuant to which the Debtor paid approximately $105,000 in acknowledged arrears. *See* de Villemejane Decl. ¶¶ 11, 13; Ex. 2, ECF No. 33-3; Ex. 4, ECF No. 33-5. The Board also highlights the Debtor's ongoing failure to make post-petition payments, which imposes operational costs on the Board and other unit owners and causes immediate and irreparable harm. *See* Lift Stay Mot. ¶¶ 25, 28, 34; Lift Stay Reply ¶¶ 11-12.

As noted, pursuant to Section 362(d)(1), the Court "shall" grant relief from the automatic stay upon a showing of "cause," including, but not limited to, circumstances in which a creditor's

interest in property of the estate lacks adequate protection. *Benton*, 662 B.R. at 521 (citing 11

U.S.C. § 362(d)(1)). Significant case law recognizes that an ongoing failure to make required

payments, especially post-petition, can constitute cause to lift the stay. "A debtor's failure to

make required post-petition payments—whether mortgage payments or rent—can constitute

'cause' to lift the stay and is 'one of the best examples of a "lack of adequate protection" under

section 362(d)(1).'" *In re Moche*, No. 25-11831 (JPM), —— B.R. ——, ——, 2026 WL 657433,

at *13 (Bankr. S.D.N.Y. Mar. 9, 2026) (quoting *In re Schuessler*, 386 B.R. 458, 480 (Bankr.

S.D.N.Y. 2008)); *see also In re Taylor*, 151 B.R. 646, 648 (E.D.N.Y. 1993) ("[A] debtor's failure

to make regular mortgage payments as they become due constitutes sufficient 'cause' to lift the

automatic stay."); *In re Tihi Rest. Corp.*, No. 22-11216 (JPM), 2023 WL 1768373, at *2 (Bankr.

S.D.N.Y. 2023) (recognizing that "the right to timely payment of post-petition rent constitutes an

interest in property entitled to adequate protection," and that courts may lift the stay for the

failure to pay post-petition rent) (quoting *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404

(Bankr. S.D.N.Y. 2001) (internal quotations removed)).

Here, consistent with the statute's terms and this line of authority, Debtor's failure to

make post-petition common charge payments constitutes "cause" for lifting the stay

under Section 362(d)(1), especially because that ongoing post-petition failure follows a long

period of prepetition default that has persisted since August 2023. *See* Suppl. Decl. ¶ 5. Ruling

otherwise would consign the Board to tolerating an ongoing loss of contractually required

revenues on which it depends on a continuous basis. An eventual repayment at some point after

Debtor's bankruptcy case plays out will not rectify this harm. This same conclusion might not

necessarily follow in the many cases that involve mortgage obligations, because the Court's

analysis here depends significantly on the Board's showing that it is experiencing actual and

ongoing "irreparable harm" as a result of Debtor's nonpayments. The Court further notes that some of the case law, including decisions cited above such as *In re Moche*, can be read as compressing the text of Section 362(d)(1) or conflating their discussion of "cause" and "adequate protection." *See Moche*, 2026 WL 657433, at *14 (citing cases). This decisional wording is unsurprising because in many lift-stay cases "adequate protection" is the central and possibly only issue, thus inviting discussion that makes it sound as if "cause" and "adequate protection" are coextensive. But the statutory text makes clear that the two concepts are not coextensive, and that "cause" can exist even where "adequate protection" of eventual full payment is present. The Board has shown, including through its unrebutted declaration, that that is the case here.

This conclusion makes Debtor's contention that adequate protection exists here immaterial. Specifically, the Debtor contends that there is an equity cushion of roughly $750,000 in the Unit based on a purported value of $2,500,000 according to Debtor's schedules. *See* Schedule A/B. Because the Unit is encumbered by a senior mortgage of $1,300,000 held by KeyBank National Association and a claim of about $450,000 by the Board, *see* Claims Register Nos. 2-1 and 3-1, this would leave an equity cushion approximately 30% of the total value of the Unit. Many cases that turn on the existence or non-existence of adequate protection for a secured creditor's property interest view such cushions as dispositive: *See Wilmington Tr. Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470, 478 (S.D.N.Y. 2013) ("It is well-settled that the existence of an equity cushion can be sufficient, in and of itself, to constitute adequate protection.") (internal citations omitted). And courts have consistently held that an equity cushion of 20% or more constitutes sufficient adequate protection. *See, e.g.*, *In re Singh*, No. 25-10431 (JPM), 2025 WL 2315415, at *3 (Bankr. S.D.N.Y. Aug. 11, 2025) (citing *AMR Corp.*, 490 B.R. at 478); *In re Han*, No. 25-12126 (JPM), 2026 WL 184461, at *4 (Bankr. S.D.N.Y. Jan.

22

23, 2026) (describing a 30% equity cushion as "substantial"); *In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987).

The Board challenges Debtor's assertion that adequate protection exists here, *see* Lift Stay Reply ¶¶ 7-12, but resolving this dispute on the merits would require additional evidence, and is not necessary to the Court's decision given the conclusion that "cause" exists to lift the automatic stay without regard to whether a robust-enough equity cushion is or is not present.

**B. A Review of the *Sonnax* Factors Confirms Cause Exists to Lift the Stay**

This decision first focused on what the Court considers the heart of the matter. Doing so results in a later-than-usual identification and application of the factors that courts in this jurisdiction routinely employ in deciding whether to allow a resumption of pre-petition litigation pending in another court, usually a state court. But those factors also favor lifting the stay pursuant to Section 362(d)(1) to permit the Board to continue with its state-court litigation and judgment enforcement efforts to the extent necessary.

Where a movant seeks relief to proceed with pending litigation in another forum, courts in the Second Circuit apply the factors articulated in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). The factors are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

23

*Sonnax*, 907 F.2d at 1286 (2d Cir. 1990).

"Not all of the *Sonnax* factors are relevant in every case, and the Court need not give equal weight to each factor." *Moche*, 2026 WL 657433, at \*7 (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)). "When applying these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to claimants, the debtor and the estate." *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994) (citations omitted); *see also In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

The Board seeks relief from the automatic stay to resume the foreclosure action that already led to a judgment in the Board's favor, issued in the State Court before the bankruptcy case was filed. In determining whether "cause" for stay relief exists, the Court applies the *Sonnax* factors. *See Sonnax*, 907 F.2d at 1286. The third, fifth, sixth, and possibly fourth factors are not met and/or not relevant here: the Debtor is not acting as a fiduciary; whether a "specialized tribunal" has been established to hear this cause of action depends on whether one considers the State Court a specialized tribunal in foreclosure proceedings, over which it has vast experience and expertise; no insurer is involved (and so the Court cannot conclude that the role of the bankruptcy estate is in name only, and thus not significantly impacted by lifting the stay); and the action does not primarily involve third parties (and so there is no disproportionate benefit to non-debtors or frustration of the Board's entitlements against non-debtors).

Nevertheless, the first, seventh, eighth, ninth, tenth, eleventh, and twelfth factors favor lifting the stay in the circumstances of this case, while the second, although moderately favoring Debtor, is of mixed or limited significance here.

24

The first factor, *i.e.*, "whether relief would result in a partial or complete resolution of the issues," supports lifting the stay. Allowing the state court foreclosure to proceed would resolve, in whole or in part, the issues between the parties, and in doing so, promote the efficient administration of the bankruptcy case. *See Bogdanovich*, 292 F.3d at 113. Lifting the stay would resolve the Board's issue regarding the Debtor's common charge delinquency and other arrears because foreclosure would lead to the satisfaction of the amounts owed to the Board, including the amount of the Judgment.

The second factor, *i.e.*, the "lack of any connection with or interference with the bankruptcy case," is mixed but not decidedly satisfied. The Debtor emphasizes that it wishes to pursue a refinancing or restructuring that would allow it to continue to own and operate the unit. Lifting the stay to allow the foreclosure to proceed would seriously impair whatever (questionable) opportunity the Debtor has to achieve that objective. This impact seems of relatively little practical impact, however, because the Debtor has made no showing that it is taking any meaningful steps that could result in a confirmable plan of reorganization.

The seventh factor, *i.e.*, "whether litigation in another forum would prejudice the interests of other creditors," favors relief from stay. The state court foreclosure action will not prejudice the interests of any other creditor, since there are no unsecured creditors and only one other senior secured creditor in addition to the Board. *See* Official Forms 104/204 [ECF No. 16]; Schedule A/B; *In re Cloud Nine, Ltd*., 3 B.R. 202, 204 (Bankr. D.N.M. 1980).

The eighth and ninth factors (respectively, "whether the judgment claim arising from the other action is subject to equitable subordination" and "whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor") are not present and thus do not favor maintaining the stay. The Judgment will not be subject to equitable subordination

because no claim or evidence was presented to show any misconduct by the Board and the state

court proceedings did not result in a judicial lien that the Debtor could avoid.

The tenth factor ("the interests of judicial economy and the expeditious and economical

resolution of litigation") strongly favors lifting the stay. *See Stranz v. Ice Cream Liquidation,*

*Inc.* (*In re Ice Cream Liquidation, Inc.*), 281 B.R. 154, 166 (Bankr. D. Conn. 2002); *In re Cicale*,

No. 05-14462 (AJG), 2007 WL 1893301, at *4 (Bankr. S.D.N.Y. June 29, 2007). As the

discussed *supra*, the Debtor's Claims Objection is barred by the doctrines of *Rooker-Feldman*

and *res judicata* because it seeks to relitigate issues already decided by the state court. To the

extent the Debtor has a viable claim against the Board, it cannot be pursued in the manner the

Debtor attempts here, while Debtor is not foreclosed from pursuing remedies in state court, or,

possibly, in this Court through an adversary proceeding. Debtor's effort to open a second front in

the face of the State Court judgment would create a duplicative round of litigation on claims that

are clearly doomed to fail as presently raised by Debtor. Lifting the stay is appropriate where

retaining the stay would result in unnecessary duplication of probably pointless judicial

effort. *See Moche*, 2026 WL 657433 at *11.

The eleventh factor, *i.e.*, "whether the parties are ready for trial in the other proceeding,"

supports lifting the stay. The term "trial" is interpreted more broadly to assess whether the non-

bankruptcy litigation has progressed to an advanced stage such that permitting it to proceed

would advance efficiency, rather than result in unnecessary duplication of effort especially when

the litigation in the original forum is near resolution. *See Montague Pipeline Techs. Corp. v.*

*Grace/Lansing & Grace Indus., Inc. (In re Montague Pipeline Techs. Corp.)*, 209 B.R. 295, 306

(Bankr. E.D.N.Y. 1997) ("[I]t is reasonable to conclude that the true inquiry under this factor is

whether the litigation in question has reached an advanced stage."); *Finizie v. City of Bridgeport*

*(In re Finizie),* 184 B.R. 415, 419 (Bankr. D. Conn. 1995) (lifting stay where "the state court proceedings have progressed to final judgments"); *In re Consolidated Distributors, Inc.*, No. 13-40350 (NHL), 2013 WL 3929851, at \*11 (Bankr. E.D.N.Y. July 23, 2013). Given that the state court foreclosure proceedings have already concluded with the entry of the Judgment in favor of the Board and the Debtor did not timely perfect an appeal of it, *see* de Villemejane Decl. ¶ 18; Ex. 6, ECF No. 33-7, the "ready for trial" factor is more than satisfied.

Lastly, the twelfth factor, *i.e.*, the "impact of the stay on the parties and the balance of harms," strongly supports lifting the stay. This factor "raises similar considerations as deciding whether to remand on equitable grounds." *Montague Pipeline*, 209 B.R. at 307*; see also Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004). Courts have described analysis of this *Sonnax* factor as "one of the most important." *See, e.g.*, *In re Motors Liquidation Co.*, No. 10-4322 (JGK), 2011 WL 2462773, at \*2 (S.D.N.Y. June 20, 2011); *In re Lyondell Chemical Co.*, 402 B.R. 596, 610 (Bankr. S.D.N.Y. 2009). Here, leaving the automatic stay in effect would unfairly harm the Board by delaying its enforcement of a valid foreclosure judgment. The Debtor's continued failure to make post-petition payments, along with the monthly operating reports (MORs) showing that accumulated depreciation has reduced the property's value, has diminished and continuously diminishes the equity cushion that supports the Debtor's argument to maintain the stay. And the impact of maintaining the stay severely prejudices the Board and other owners of condominium units given Debtor's ongoing failure to pay common charges, resulting in financial shortfalls that the Board and other occupants must subsidize for as long as Debtor is allowed to benefit from the stay without even making payments. When weighed against the seriousness of that harm, the loss of Debtor's opportunity to have more collection-free time to salvage a

27

workable plan is minor, especially considering all the time that has passed without Debtor showing any serious effort or reasonable likelihood of achieving a viable plan.

In sum, and particularly because the interest of judicial economy and prompt resolution of disputes along with the balance of hardships tilt decidedly in favor of lifting the stay, the *Sonnax* factors weigh in favor of lifting the stay to permit the Board to enforce the Judgment. The stay therefore is lifted pursuant to Section 362(d)(1).

### C. The Court Need Not Determine at This Stage Whether the Debtor's Petition Was Filed in Bad Faith

The Court's conclusion that cause to lift the stay exists makes it unnecessary to determine whether Debtor filed its case in bad faith. The Court nevertheless discusses this question because the parties have extensively contested it, and to make clear that the Court's resolution of the motion does not rest on a finding that this case flows from a bad-faith filing.

"Although not expressly stated in section 362(d)(1), it is well established that a debtor's bad faith constitutes 'cause' for relief from the automatic stay under that section. *See In re 68 West 127 Street, LLC,* 285 B.R. 838, 843 (Bankr. S.D.N.Y. 2002) (citing *In re AMC Realty Corp.*, 270 B.R. 132, 140–41 (Bankr. S.D.N.Y. 2001). While the Bankruptcy Code does not define "bad faith," courts have recognized that "bad faith under Section 362 is often found upon a showing that a single asset debtor or a non-going concern filed with the intent to gain relief from a state court action." *See Wang Real Prop. LLC v. Hon (In re Wang Real Prop. LLC)*, 786 Fed. App'x 324, 325 (2d Cir. 2019); *see also Sonnax*, 907 F.2d at 1287. Further, "an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally— the debtor must have some intention of reorganizing." *See Baker v. Latham Sparrowbush Assocs. (Matter of Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 228 (2d Cir. 1991). Where it is evident from the outset that the Debtor has no reasonable probability of emerging from bankruptcy and

28

no realistic chance of reorganizing, then the petition may be deemed improper. *Id.* at 227. The Second Circuit has identified several non-exclusive factors to assess bad faith as evidence for cause to lift the stay pursuant to Section 362(d)(1).[1] Courts, though, have repeatedly cautioned against applying such factors mechanically, and the inquiry depends on the totality of the circumstances. *In re Shar,* 253 B.R. 621, 630 (Bankr. D.N.J. 1999) (citing numerous cases for the proposition that "[t]he existence of 'bad faith' depends not on any one specific factor but on a combination of factors determined after careful examination of the facts of the particular debtor's case").

But "the concept of bad faith filing should be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors, except in extraordinary circumstances." *AMC Realty*, 270 B.R. at 141 (citing *In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997)). Lifting the stay on bad faith grounds "is an extraordinary remedy that requires careful examination of the facts on a case-by-case basis." *234-6 W. 22nd St. Corp.*, 214 B.R. at 757.

The Board argues that the Debtor filed this Chapter 11 petition for the sole purpose of delaying the foreclosure sale and improperly challenging the Judgment in federal court, thereby acting in bad faith. The Board also relies on the fact that the Debtor has not listed any other creditors and is not in a position to propose a confirmable plan. *See* Lift Stay Mot. ¶¶ 50-54.

The Board could be right that the case was filed in bad faith, but the record as it now stands is insufficient to support a finding of bad faith. Filing for bankruptcy with the intent, in

---

[1]    The factors are: (i) the debtor has only one asset; (ii) the debtor has few unsecured creditors, whose claims are small in relation to those of the secured creditors; (iii) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (iv) the debtor's financial condition is, in essence a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (v) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (vi) the debtor has little or no cash flow; (vii) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (viii) the debtor has no employees. *See In re C-TC 9th Ave. P'ship v. Maplewood Colonie Common School Dist. (In re C–TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997).

part, to gain relief from a state-court action does not necessarily constitute bad faith. *See Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1073 (5th Cir. 1986); *Sonnax*, 907 F.2d at 1287. Even an effort to halt a foreclosure sale, when undertaken in furtherance of a legitimate organization, does not constitute bad faith. *See Cinema Serv. Corp. v. Edbee Corp.*, 774 F.2d 584, 586 (3d Cir. 1985); *Cohoes*, 931 F.2d at 228. Unlike in *Wang Real Property*, where the debtor used bankruptcy to run out the clock on a lien, *see* 786 F. App'x at 325, the Judgment here was entered on October 3, 2025, and the petition was filed on November 7, 2025, just over one month later, so there is no likelihood that the Debtor is using this bankruptcy in an effort to delay matters so long that the lien will expire. Bankruptcy law is designed to afford debtors a measure of breathing room from creditors, and some degree of frustration to creditors is an inevitable consequence of filing. *See Cohoes*, 931 F.2d at 228. Further, the Court recently entered an order extending the Debtor's exclusivity period to file a plan, *see* ECF No. 42, in response to Debtor's assurance that it intended to use additional time to seek to reorganize or otherwise achieve a beneficial outcome through the bankruptcy case. Whether the reorganization will be successful remains to be seen but mere uncertainty of future success does not establish that a petition was filed in bad faith. This conclusion is also reinforced by the reality that the Debtor has also continued to provide monthly operating reports and has continued payments to its senior secured creditor, KeyBank. Given these factors, the Court cannot conclude on this record that Debtor filed this case in bad faith or is pursuing it in bad faith. *See Shar,* 253 B.R. at 630.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Debtor's Claims Objection and GRANTS the Lift Stay Motion.

The Court retains exclusive jurisdiction to enforce this opinion and order and to adjudicate any disputes that may arise from its implementation and interpretation. The Court intends this opinion and order to be self-effectuating, meaning that the Court believes no separate order need be entered to memorialize and implement it. The time to appeal commences upon entry of this opinion and order.

IT IS SO ORDERED.


Dated: New York, New York
       May 14, 2026

                                        *s/ David S. Jones*
                                        Honorable David S. Jones
                                        United States Bankruptcy Judge